Syllabus.

# Richmond.

## LINWOOD JONES v. COMMONWEALTH.

January 18, 1923.

1. INTOXICATING LIQUORS—*Possession of Still—Evidence Sufficient to Justify Conviction—False Swearing—Case at Bar.*—In a prosecution for the possession of a still, while the evidence for the Commonwealth of itself was insufficient to show beyond a reasonable doubt that accused was in possession of the still at the time in question, accused, when he testified, denied that he had ever been in the outhouse where the still was found, or had ever seen the owner of the outhouse or entered into any agreement with him for the possession of the outhouse, all of which was contradicted by evidence for the Commonwealth.

   *Held:* That this false testimony warranted the jury in the inference that accused's statement of his purpose in going to the outhouse was also false, and that his real purpose was to carry the still to the house so as to have it ready when his right of possession of the outhouse commenced, and that accordingly the still was in his possession at the time in question.

2. WITNESSES—*Criminal Law—Credibility of Witnesses—Conclusiveness of Verdict of Jury—Case at Bar.*—In the instant case it was possible that the testimony of accused was true and that he was innocent, but, if so, the witnesses for the Commonwealth swore falsely. It is only upon that conclusion that there could be any reasonable doubt of the guilt of the accused; and so the case turned upon the credibility of the witnesses for the Commonwealth on the one side, and of the accused and his witnesses on the other. Such being the case the jury's verdict of guilty was conclusive upon both the trial and appellate courts upon that subject.

3. INTOXICATING LIQUORS—*Possession of Still—Exclusive Possession—Actual and Constructive Possession.*—The principle of law that to find a person guilty of the possession of an article such possession must be exclusive, is applicable only in cases of constructive possession, not to actual possession, and therefore inapplicable to the instant case, which did not rest upon the idea that the accused had constructive possession of a still, due to his right of possession of the building in which the still was, for his tenancy of the building had not commenced. The verdict rested upon the testimony tending to show

that the accused put the still in the building prior to the commencement of his tenancy, and thus had actual possession of the still at the time he put it there.

Error to a judgment of the Hustings Court of the city of Richmond.

*Affirmed.*

The indictment charged that the accused, on a certain date named, not being then and there a druggist, nor engaged in operating a hospital or laboratory, did then and there "have in his possession a certain still," etc., "used and capable of being used in the manufacture of ardent spirits," etc., which is a statutory offense punishable by fine of not less than fifty nor more than five hundred dollars and confinement in jail not less than one nor more than six months.

There was a verdict of the jury finding the accused guilty and fixing his punishment at sixty days in jail and a fine of $50.00. The trial court entered judgment accordingly and the accused assigns error.

The only assignment of error is that there was not sufficient evidence to support the verdict, in that it did not establish beyond a reasonable doubt that the accused was in possession of the still.

The whole of the evidence in the case appears in the record as follows:

"A certain building, located in the city of Richmond, Virginia, caught on fire; said building was an outhouse or kitchen in the rear of a dwelling occupied by a blind man, whose name was Smith, and his wife; said building was located on the property of the said Smith and was part and parcel of his premises; said Smith and his wife testified that Linwood Jones and another man named Meadows (who has heretofore been convicted on a similar charge) came to Smith's home and offered to

rent said outhouse or kitchen; that the said Linwood
Jones offered to pay to said Smith five ($5.00) dollars
per month for said outhouse; said Smith agreed to said
offer by Jones; stating that possession could be had on
Thursday of the following week; said agreement was
entered into during the week preceding the fire; said
Smith further stated that he could not give possession
until the following Thursday because of the fact that he
(Smith) had a load of old papers in said outhouse and
could not get them out before Thursday of the following
week; Jones then asked permission to come to said
house and strip up some cracks in the wall the following
Monday after (the) agreement was made, which per-
mission was granted; Smith and wife and Meadows tes-
tified to the above facts; the following Monday after
said agreement said building caught fire; it was further
testified that Jones, Meadows and Smith had been in
said outhouse on the morning of said fire, Smith stating
that he had been in said building moving out the old
papers.

"While the said outhouse was on fire two officers came
up to investigate and found a still in said outhouse; they
also found a burnt barrel of mash; upon making such
discovery they arrested Smith and his wife; both of
whom denied all knowledge of said still being in said
outhouse; Smith and wife told the officers the facts
above stated and warrants were issued for Jones (de-
fendant) and Meadows. Smith and wife were carried
to the police station but were later released and used as
witnesses against the said Meadows and defendant,
Jones; that said Meadows was arrested, tried and con-
victed on such evidence; that defendant, Jones, was ar-
rested and tried and convicted on said charge; said fire
and arrest took place preceding the Thursday on which
possession was to be had by Jones. A woman, who

was a next door neighbor of Smith, testified that she had seen Jones and Meadows in the back yard of said premises of Smith on several occasions; that she had seen them in the back yard of said premises, and had also heard them talking and moving about in said outhouse a short time before the fire, and heard the explosion of the oil stove which caused the fire. The evidence further showed that the still was capable of manufacturing ardent spirits; no evidence was offered as to who put the still in said outhouse, or as to the length of time said still had been in said house."

And the defendant, in rebuttal of such testimony offered by the Commonwealth, introduced the following evidence:

"Defendant testified that he had never been to the said house of Smith; that he had nothing whatever to do with said still; that he did not put it there, nor have any knowledge of it being there; he further denied the agreement entered according to the evidence aforesaid, and that he had ever been in the house of Smith in his life; that he had never seen Smith in his life before his arrest. Two witnesses testified that accused worked for a man named Roane, about one mile from the said house of Smith, and that he worked every day prior to the time of his arrest on this charge. No denial is made that the still was capable of making ardent spirits."

*Percy S. Smith*, for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The sole question presented to us for decision is the following:

[1] 1. Was there sufficient evidence before the jury to warrant them in believing beyond a reasonable doubt that the still was in the possession of the accused on the Monday mentioned in the evidence.

The question must be answered in the affirmative.

The direct evidence for the Commonwealth is to the effect that the accused and Meadows were "heard * * * talking and moving about in (the) outhouse" (in which the still was found) "a short time before the fire"(which burned the outhouse); that the fire was caused by the explosion of an oil stove; that while Smith, the owner of the building, had been in it that morning, he was there for the purpose of moving out some old papers and had, as he testified, no knowledge of the still being in the house; that the accused had rented the outhouse from Smith, although he was not entitled to the possession of it until after the day of the fire, and had asked of and was given by the owner permission to come to the house on the day of the fire for the purpose of stripping up some cracks in the wall, as he stated when he asked such permission.

It may be conceded that this evidence of itself was insufficient to show beyond a reasonable doubt that the accused was in possession of the still at the time in question; for if he was in the outhouse with Meadows merely for the purpose of "stripping up some cracks in the wall," as he had stated as aforesaid would be his purpose in going there that day, all of the evidence for the Commonwealth might have been consistent with his innocence of the charge of having the still in his possession. But when the accused testified he denied that he had ever been in the house; denied that he had entered into any rental agreement for it; and denied that he had ever

seen Smith, the owner of the house. These denials were, according to the testimony of the witnesses for the Commonwealth, all false. This false testimony warranted the jury in the inference that the aforesaid alleged purpose of the accused of going to the house on the day of the fire was also false; that his real purpose in going into the house on that day was to carry the still there so as to have it ready to be set up for operation on the following Thursday, when his right of possession of the building commenced under his lease of it; that he accordingly carried the still there on the day of the fire, with the assistance of Meadows, and hence, had it in his possession at the time he and Meadows were in the building a short time before the fire.

[2] Of course, it is possible that in this case the accused may have told the truth and be innocent. But if so, the witnesses for the Commonwealth swore falsely. It is only upon that conclusion that there could be any reasonable doubt of the guilt of the accused. And so we find that the case turns upon the credibility of the witnesses for the Commonwealth on the one side and of the accused and his witnesses on the other. The verdict of the jury is conclusive upon us (as it was upon the learned trial judge, as he so considered, as is evidenced by his refusal to set aside the verdict), and is conclusive against the accused upon that subject.

[3] The petition for the writ of error urges upon our consideration the well-known principle of law applicable under certain circumstances, that to find a person guilty of possession of an article such possession must be exclusive. No authorities are cited and hence we shall not here review them. We deem it sufficient to say on the subject that the principle referred to is applicable only in cases of constructive possession, not to actual possession. The verdict in the instant case does

not rest upon any idea that the accused had constructive possession of the still due to his right of possession of the building in which the still was, for his tenancy of the building had not commenced. The verdict rests upon the testimony tending to show that the accused put the still in the building prior to the commencement of his tenancy and thus had actual possession of the still at the time he put it there.

The case must be affirmed.

*Affirmed.*